UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

ALAN KUSHNER, :
:
         Petitioner, :
    v. : No. 2:16-cv-0045
:
JOSEPH TERRA *et al.*, :
:
         Respondents. :

**O P I N I O N**
Report and Recommendation, ECF No. 40 – Adopted

**Joseph F. Leeson, Jr.**          **August 2, 2024**
**United States District Judge**

**I.**     **INTRODUCTION**

Alan Kushner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his jury conviction of criminal solicitation to commit murder in the Montgomery County Court of Common Pleas. Magistrate Judge Carol Sandra Moore Wells issued a Report and Recommendation ("R&R") recommending that the habeas corpus claims be denied and dismissed, to which Kushner has filed objections. For the reasons that follow, the objections are overruled and the petition is denied and dismissed.

**II.**     **BACKGROUND**

The R&R summarizes the factual and procedural background of this case. *See* R&R, ECF No. 40. Kushner does not object to this summary and, after review, it is adopted and incorporated herein.

Of note, on July 20, 2009, Kushner was convicted of solicitation to commit murder of his wife and was sentenced to seven and one-half to twenty years of incarceration. Kushner's direct

appeal was denied and his sentence was affirmed.  *See Commonwealth v. Kushner*, 23 A.3d 573 (Pa. Super. Ct. Dec. 8, 2010), *allocatur denied*, 30 A.3d 487 (Pa. 2011).  Following the denial of his appeal, Kushner unsuccessfully pursued numerous PCRA petitions, beginning in October of 2012.

On January 5, 2016, Kushner filed a writ for habeas corpus.  *See* ECF No. 1.  On March 2, 2016, Magistrate Judge Wells stayed the petition pending resolution of Kushner's ongoing PCRA proceedings.  *See* ECF No. 10.  On June 7, 2021, Kushner filed a "Supplemental 2254 Motion" in which he informed Magistrate Judge Wells that the PCRA petitions were resolved.  *See* ECF No. 17.  On August 15, 2023, the Montgomery County District Attorney's Office filed a response.  *See* ECF No. 34.  On October 30, 2023, Kushner filed a reply.  *See* ECF No. 39.

On March 1, 2024, Magistrate Judge Wells issued an R&R finding Kushner's eighth claim non-cognizable, his first claim procedurally defaulted, and his remaining claims meritless.  *See* ECF No. 40.  Kushner filed objections to the R&R on April 17, 2024.  *See* ECF No. 44-45.[1]

**III.   LEGAL STANDARDS**

    **A.   Report and Recommendation – Review of Applicable Law**

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made.  28 U.S.C. § 636(b)(1)(C); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)."  *Hill v. Barnacle*, 655 F. App'x. 142, 147 (3d Cir. 2016).  The "court may

---

[1]   Kushner filed his objections twice.  One version has the Strohm report attached while the other does not.  They are otherwise identical.

accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C).

      **B.**      **Habeas Corpus Petitions under 28 U.S.C. § 2254 – Review of Applicable Law**

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before seeking federal habeas review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Where a petitioner has failed to properly present his claims in the state court and no longer has an available state remedy, he has procedurally defaulted those claims. *Id.* at 847-848. An unexhausted or procedurally defaulted claim cannot provide the basis for federal habeas relief unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 732-33, 750 (1991) (explaining that a "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion [because] there are no state remedies any longer 'available' to him"). The Supreme Court has held that the ineffectiveness of counsel on collateral review may constitute "cause" to excuse a petitioner's default. *See Martinez v. Ryan*, 566 U.S. 1 (2012). The fundamental miscarriage of justice exception "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562

U.S. 594, 598 (2011) (internal quotations omitted); *See also* 28 U.S.C. § 2254(d);[2] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (holding that there is a "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard" because the question before a federal court is not whether the state court's determination was correct, but whether the determination was unreasonable); *Hunterson v. Disabato*, 308 F.3d 236, 245 (3d Cir. 2002) ("[I]f permissible inferences could be drawn either way, the state court decision must stand, as its determination of the facts would not be unreasonable."). Additionally, "a federal habeas court must afford a state court's factual findings a presumption of correctness and that [] presumption applies to the factual determinations of state trial and appellate courts." *Fahy v. Horn*, 516 F.3d 169, 181 (3d Cir. 2008). The habeas petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

      C.      **Claims of Ineffective Assistance of Counsel - Review of Applicable Law**

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the performance was prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). There is a strong presumption that counsel is effective and the courts, guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions. *Id.* at 689 (explaining that courts should not second-guess counsel's assistance and engage in "hindsight to reconstruct the circumstances of counsel's challenged conduct"). The mere existence of alternative, even more

---

[2] "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . .; or . . . resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d).

preferable or more effective, strategies does not satisfy the first element of the *Strickland* test. *See Marshall v. Hendricks*, 307 F.3d 36, 86 (3d Cir. 2002). To establish prejudice under the second element, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000) (quoting *Strickland*, 466 U.S. at 694). The court must consider the totality of the evidence and the burden is on the petitioner to prove ineffectiveness. *Strickland*, 466 U.S. at 687, 695.

        **D.**        ***Brady v. Maryland* – Review of Applicable Law**

Under *Brady v. Maryland*, the prosecution must produce to the defendant evidence that is material to either guilt or punishment, irrespective of good or bad faith. 373 U.S. 83, 87 (1963); *see also United States v. Bagley*, 473 U.S. 667, 676 (1985) (extending *Brady* to impeachment and exculpatory evidence); *Giglio v. United States*, 405 U.S. 150, 154 (1972). "A *Brady* violation occurs if: (1) the evidence at issue is favorable to the accused, because either exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'" *Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011). "Evidence is material if there is a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different." *Wilson v. Beard*, 589 F.3d 651, 665 (3d Cir. 2009). "A 'reasonable probability' of a different result is shown when the government's suppression of evidence 'undermines confidence in the outcome of the trial.'" *Id*. (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). The Third Circuit has further explained that "evidence may be material if it could have been used effectively to impeach or corral witnesses during cross-examination." *Johnson v. Folino*, 705 F.3d 117, 129-30 (3d Cir. 2013). To that end, the Third Circuit has instructed district courts to consider not only the content of the evidence at

issue but also "where it might have led the defense in its efforts to undermine [a particular witness]" when determining whether evidence is "material." *Id*. at 131.

## IV.   ANALYSIS[3]

Presently before the Court are Kushner's objections to the R&R's conclusions regarding his ineffective assistance of counsel and *Brady* claims. The Court has conducted a de novo review of these claims and now writes to address each objection as well as another ground raised in the habeas petition but unaddressed in the R&R.

### A.   Ineffective Assistance of Counsel

Kushner objects to Magistrate Judge Wells' conclusion that trial counsel was not ineffective for failing to levy a jurisdiction and/or venue challenge. Rolled into the same objection, Kushner seemingly argues that his counsel was ineffective for failing to raise 18 Pa.C.S. § 905(b) as a defense to jurisdiction or venue. The Court overrules these objections. Finally, Kushner's habeas petition argues that counsel was ineffective for failing to seek a hearing pursuant to *Franks v. Delaware*. Since this last claim was unaddressed by the R&R, the Court addresses the matter here.

---

[3]   The numerous PCRA efforts, lengthy record, and inconsistent arguments of Kushner's post-conviction efforts muddle disposition of this habeas petition. Nonetheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Thus, "[m]erits review may be preferable when, for example, the substantive issues are straightforward, and the procedural concerns involve complicated issues of state law." *Romero v. Beard*, No. CV 08-0528-KSM, 2024 WL 1975475, at *6 (E.D. Pa. May 2, 2024). Given the convoluted procedural posture of this case, the Court opts to take this route on several objections.

1.      Challenges to Subject Matter Jurisdiction & Venue

Kushner argues that his trial counsel was ineffective for failing to object to "jurisdiction/venue in Montgomery County."[4] Pet. at 12.  Kushner's theory, which appears to be as follows, does not entitle him to relief.  He argues that his trial counsel should have requested a bill of particulars to determine where the solicitation occurred.  Had counsel done so, he would have found that the solicitation occurred only in Philadelphia, not Montgomery County.  This fact would have led competent counsel to move to dismiss the solicitation count or sever it from the attempted murder and conspiracy counts. The upshot is that Kushner would have been relieved of the prejudice of trying all three counts together in front of a Montgomery County jury.

Kushner raised substantially the same claim in his initial PCRA. *See* ECF No. 7-10.  The same was rejected by the Superior Court which reasoned that:

> Although the solicitation occurred in Philadelphia County at Defendant's office the crime was to be carried out at the marital home of Defendant and his wife in Bala Cynwyd, Montgomery County. As such, Montgomery County was the proper jurisdiction to hear the instant case. *See Commonwealth v. Carey*, 439 A.2d 151, 155 (Pa. Super. 1981) ("It's logical that even though the original solicitation may have taken place in Philadelphia County, the ultimate act was to be performed in Delaware County and that county should have jurisdiction to try the defendant.")

*Commonwealth v. Kushner*, No. 2357 EDA 2014, 2015 WL 6470520 at *15 (Pa. Super. Ct. Oct. 6, 2015).  Thus, the Superior Court found, because the claim "has no merit, [trial counsel] was not ineffective in this respect."  *Id.*  The Superior Court's application of *Strickland* is neither "contrary to, or involved an unreasonable application of, clearly established Federal law" nor "based on an unreasonable determination of the facts in light of the evidence presented."  28

---

[4]     While Kushner uses venue and jurisdiction interchangeably, they are not the same.  *See Commonwealth v. Bethea*, 828 A.2d 1066, 1074-75 (Pa. 2003).

U.S.C. § 2254(d).  Any jurisdictional challenge would have failed because "all courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code." *Commonwealth v. Bethea*, 828 A.2d 1066, 1074 (Pa. 2003).

As regards Kushner's ineffective assistance of counsel claim regarding venue, it too would have failed because "a charge of solicitation may be tried in the county where the ultimate criminal act was to be performed." [5] *See Commonwealth v. Kingston*, No. 2016 MDA 2012, 2014 WL 10558605, at *2 (Pa. Super. 2014)).  Moreover, "[v]enue relates to the right of a party to have the controversy brought and heard in a particular judicial district" and is "predominately a procedural matter, generally *prescribed by rules of [the Pennsylvania Supreme] Court*."  *Bethea*, 828 A.2d at 1074 (emphasis added).  This Court must defer to the state court's interpretation of its own law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.")[6]

---

[5]   *See* 28 U.S.C. § 2254 (b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

[6]   Finally, the Court notes that, as Kushner points out, there is indeed a constitutional dimension to venue.  For example, the Sixth Amendment contains a vicinage clause which Kushner only vaguely references in his objections.  Obj. at 23.  However, the vicinage clause has not been incorporated to apply to state court proceedings. *See Concepcion v. Varano*, No. 1:11-CV-02225, 2017 U.S. Dist. LEXIS 171612, at *16-17 (M.D. Pa. Oct. 16, 2017) ("the Third Circuit has held that the Sixth Amendment vicinage provision is not applicable to state criminal trials.")  Kushner's brief also makes passing reference to Article III, Section II, Clause III.  However, that clause has no bearing as it requires that the trial "be held in the *State* where the said Crimes shall have been committed."  U.S. Const. art. III, § 2, cl. 3 (emphasis added).  Here, Kushner does not argue he was tried in the wrong state but rather the wrong county.

Since counsel cannot be ineffective for failing to raise a meritless argument, Kushner's claims with respect to jurisdiction and venue fail. *See Glass v. Sec'y Pennsylvania Dep't of Corr.*, 726 F. App'x 930, 933 (3d Cir. 2018).

        2.        Section 905(b): Mitigation of Solicitation

In his objections, Kushner reiterates 18 Pa.C.S. § 905(b) as a basis for relief. However, his theory in this respect is unclear. At times, he relates Section 905(b) to Montgomery County's subject matter jurisdiction over his case. For instance, on appeal of the denial of his second PCRA petition, he argued that "based on a lack of subject matter jurisdiction the lower Court should have granted relief pursuant to Rule 905(b)." *Commonwealth of Pennsylvania, v. Alan Kushner*, (Brief of Appellant), 2016 WL 6668660 at * 34 (Aug. 16, 2016). At other times, the argument is couched in terms of venue. *See* Obj. at 23. ("However, this was a question of venue, which is clearly not a state law question.") Most importantly, but adding further confusion, Kushner's habeas petition relates Section 905(b) to a sufficiency/weight of the evidence claim, arguing that "pursuant to 18 Pa.C.S. § 905, it is clear that the alleged solicitation of Weldon Gary was unlikely to result or culminate in the commission of a crime and, that the evidence was insufficient as a matter of law." Pet. at 10.

On appeal from the denial of Kushner's second PCRA petition, the Superior Court held that the matter was both untimely and previously litigated insofar as it related to jurisdiction because Kushner's first PCRA rejected an ineffective assistance of counsel claim for failure to challenge the jurisdiction of the trial court. *Commonwealth v. Kushner*, No. 792 EDA 2016, 2017 WL 89119 at *4 (Pa. Super. 2017).

While it is not clear which theory Kushner puts forward, it is clear Section 905(b) is inapplicable and so he cannot show prejudice for trial/initial post-conviction counsel's failure to

raise these arguments.[7] *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir.1999) ("[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). Section 905(b) provides:

> (b) Mitigation.--If the particular conduct charged to constitute a criminal attempt, solicitation or conspiracy is so inherently unlikely to result or culminate in the commission of a crime that neither such conduct nor the actor presents a public danger warranting the grading of such offense under this section, the court may dismiss the prosecution.

18 Pa.C.S. § 905(b). The Court finds that Section 905(b) has plainly no bearing on subject matter jurisdiction because the trial court would need to have jurisdiction over the crime to use the mitigation discretion afforded by Section 905(b). It logically follows that if the trial court cannot hear a case, it cannot hear the facts which might entitle the defendant to mitigation.

Nor does Section 905(b) relate to venue. Venue, at its essence, is concerned with the fairness of bringing a controversy in a particular judicial district. *Bethea*, 828 A.2d at 1074. Its "primary concern" is "the location of the trial['s] impact on the ability of the parties to have their case decided before a fair and impartial tribunal[.]" *Id*. at 1075. Again, nothing in Section 905(b) speaks to venue because the facts that might entitle one to mitigation are wholly divorced from the concerns that animate questions of venue.

Finally, in the context of a sufficiency or weight of the evidence claim, Kushner's Section 905(b) claim also fails. In his first PCRA petition, Kushner indeed brought a sufficiency of the evidence claim which the Superior Court rejected, reasoning:

> [D]uring trial, Weldon Gary testified that the Defendant offered him $20,000 to kill Defendant's wife. Furthermore, he received a $1,000 down payment from the Defendant as an advance and the Defendant gave Mr. Gary the directions to his wife's house in Bala Cynwyd and a description of her vehicle. This testimony was

---

[7]   *See* 28 U.S.C. § 2254 (b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

> corroborated by the testimony of Craig Lowman, who testified that sometime in 2008, Mr, Gary told him the Defendant gave him $1,000.
>
> In reaching their verdict, the jury clearly chose to believe the testimonies of Mr, Gary and Mr. Lowman. That is their province and since these testimonies sufficiently established the elements of Criminal Solicitation to Commit Murder, we submit the verdict was not contrary to the evidence as to shock one's sense of justice. *See Commonwealth v. Kane*, 10 A.3d 332–333 (Pa. Super. 2010). Thus, the underlying claim is meritless and we therefore cannot find appellate counsel ineffective for not raising it on appeal.

*Commonwealth v. Kushner*, No. 2357 EDA 2014, 2015 WL 6470520, at *16 (Pa. Super. Ct. Oct. 6, 2015). While the Superior Court does not address the applicability of Section 905(b) directly, its reasoning forecloses 905(b)'s prospects for relief.

Section 905(b) has narrow application. In *Commonwealth v. John*, the defendant, Donald John, communicated over the internet with who he thought was a 13-year-old girl named Missy. *Commonwealth v. John*, 854 A.2d 591 (Pa. Super. 2004). In reality, Missy was an agent of the Pennsylvania Attorney General's Office conducting an operation in conjunction with Delaware County's Internet Crimes Against Children Task Force. *Id*. at 592. Over the course of several weeks, John made it clear that his intentions were to "hook up" with the young girl, going so far as to set a meetup in Media, Pennsylvania. *Id*. Upon arriving at the meetup, John was arrested by an undercover officer. *Id*. He was convicted after a bench trial. *Id*. at 593.

On appeal, John argued that the trial court erred in refusing to dismiss the charges pursuant to Section 905(b). In particular, he argued that "because there was no 'Missy,' his conduct was inherently unlikely to result in the commission of a crime and so dismissal was proper." *Id*. at 597. The Superior Court upheld the conviction, reasoning that Section 905(b) explicitly requires a finding that the actor does not pose a public danger. *Id*. Notwithstanding the nonexistence of Missy, John's acts clearly posed a public danger by way of his "capacity to

do wrong" and "his intent to influence someone to engage in a criminal act" as evidenced by the overt acts he took toward his criminal end. *Id*.

Similarly, Kushner's actions posed a clear public danger irrespective of Gary's intentions. As the Superior Court's examination of the evidence shows, Kushner gave Gary upfront money for the criminal purpose, directions to his wife's home, and a description of her vehicle. This presents a clear public danger. By way of contrast, the Court looks to the legislative backdrop of Section 905(b). Section 905(b) is derived from Section 5.05 of the Model Penal Code, the commentaries of which provide as an example an "effort[] to kill by incantation." ALI, Model Penal Code Part I Commentaries §5.05, vol. 2, at 491 (1985). This case stands far apart from the sort of extreme cases in which Section 905(b) might warrant the dismissal of charges. That Gary did not have the immediate means to effectuate the purpose of the solicitation does not impair Kushner's capacity to do wrong.

Thus, because any invocation of Section 905(b) would have been unsuccessful, Kushner can show no prejudice from his counsel's failure to raise that claim.

        3.     *Franks* Hearing

Kushner argues that trial counsel was ineffective for failing to seek a *Franks* hearing[8]. In particular, he argues that:

> While Counsel asserted that critical averments in the search warrant application involving an interview with Petitioner's medical receptionist, Yvette Harris (Hawkins), were not truthful, he only utilized a "four-corners" analysis to suggest

---

[8] "In *Franks*, the Supreme Court determined that a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant subsequent to the ex parte issuance of the warrant." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). "In order to obtain a hearing to do so, the defendant must first make 'a substantial preliminary showing' that the affidavit contained a false statement or omission that (1) was made knowingly and intentionally, or with reckless disregard for the truth, and (2) was material to the finding of probable cause." *United States v. Aviles*, 938 F.3d 503, 508 (3d Cir. 2019) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

> that these statements were not truthful and not sufficient to create probable cause. However, Counsel should have requested a hearing to present evidence that Hawkins was not reliable. Moreover, Counsel should have sought to reopen the suppression hearing after learning of the material witness warrants required to produce Ms. Hawkins at trial.

Pet. at 13.  At the outset, the Court notes that trial counsel indeed challenged the search.  Further, his initial post-conviction counsel raised the argument that trial counsel was ineffective for failing to challenge the denial of Kushner's Motion to Suppress.  The Superior Court addressed the same as follows:

> Again, this claim has no merit because Attorney Rose did in fact challenge this court's suppression ruling. Specifically, in his Concise Statement filed March 31, 2010, Attorney Rose raised the issue as follows:
>
>> The Defendant's pretrial motion to suppress evidence seized from his home on October 2, 2008, particularly the $75,000,00 cash taken from his safe, should have been granted because, under the four corners of the Affidavit of Probable Cause, there was inadequate probable cause to justify the search and seizure of the Defendant's residence. There was an insufficient basis for the issuing authority to reasonably conclude that the Defendant's residence contained evidence of criminal activity on October 2, 2008. As a result, the Commonwealth was able to introduce at trial evidence of the $75,000.00 cash to argue to the jury that this was evidence of the Defendant's guilt which also provided corroboration of the inculpatory solicitation testimony of Weldon Gary [.] (Citation to notes of testimony omitted).
>
> (Def. Concise Statement, 03/31/2010 # 2). On appeal, the Superior Court found the suppression challenge meritless. *Commonwealth v. Kushner*, No. 762 EDA 2010, p. 5 (Pa, Super. Dec.8, 2010). This claim is therefore waived as being previously litigated per 42 Pa.C.S.A. § 9543(a)(3); and § 9544(a). Nevertheless, we clearly cannot find Attorney Rose ineffective for failing to challenge the suppression ruling on appeal when he in fact did just that. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1224 (Pa.2006)

*Commonwealth v. Kushner*, No. 2357 EDA 2014, 2015 WL 6470520, at *17 (Pa. Super. 2015).

Notwithstanding, Kushner's argument fails for two reasons.  First, "[i]t is well-established that a substantial showing of the informant's untruthfulness is not sufficient to

warrant a *Franks* hearing." *United States v. Brown*, 3 F.3d 673, 677 (3d Cir. 1993). Rather, *Franks* is concerned with "intentional or reckless falsity *on the part of the affiant*." *Id*. (emphasis in original); *see also United States v. Krall*, No. 07-607-01, 2009 U.S. Dist. LEXIS 68244 at * 25-26 (E.D. Pa. Aug. 4, 2009) (finding defendant was not entitled to a *Franks* hearing because *Franks* hearings concern the affiant's, not the informant's, truthfulness). Kushner's petition is silent in this respect.

Second, Kushner fails to state what "substantial preliminary showing" his counsel should have made which would have entitled him to a *Franks* hearing, much less a successful one. *Franks*, 438 U.S. at 155-56. He appears to argue his counsel was ineffective for failing to attack the warrant from a different angle. However, he does not elucidate how that should have been done. Kushner argues Counsel should have presented evidence Hawkins was not reliable. He does not explain nor expound upon what this evidence is anywhere in his briefs. He does not even go so far as to explain what averments of Yvette Harris figured into any affidavit of probable cause. Instead, he puts forward the sort of "mere conclusory allegations" which are insufficient to obtain a *Franks* hearing. *Yusuf*, 461 F.3d 383 n.8. *Strickland* requires that there be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Roe*, 528 U.S. at 482 (quoting *Strickland*, 466 U.S. at 694). With respect to this claim, Kushner's theory fails early because he has failed to put forward a theory which may have entitled him to a *Franks* hearing and the protections it provides. It reasonably follows then that a *Franks* hearing would not have changed the result of the proceeding. Thus, Kushner has shown no prejudice and his claim fails.

## B.     *Brady* Violation

In his next objection, Kushner argues that the Commonwealth suppressed certain evidence about Weldon Gary in violation of *Brady*.⁹ This claim is unexhausted as it was not presented to the state court. However, a *Brady* violation may demonstrate cause and prejudice so as to excuse that default. *Johnson*, 705 F.3d at 128.

Kushner's *Brady* claim is premised on the 2019 Strohm report which purportedly revealed that Gary only testified because he was threatened with a two-to-five-year sentence had he not. Thus, the theory is that this previously unknown fact could have been used to impeach Gary's testimony because "it showed Gary's motive for testifying [was] not to receive a lengthy prison sentence." Obj. at 12. The Court finds that Kushner's claim fails because the evidence was immaterial and thus procedurally defaulted. *Banks v. Dretke*, 540 U.S. 668, 698 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 282 (1999) ("Unless suppressed evidence is 'material for *Brady* purposes, [its] suppression [does] not give rise to sufficient prejudice to overcome [a] procedural default.'")

Kushner's argument is that this evidence would have been used to undermine Gary's credibility by suggesting to the jurors that he had a motive to lie in that he would avoid prison time. This motive was referenced many times during trial. The following direct examination of Gary by the Commonwealth made it clear Gary was testifying under immunity:

> Q: When we've - - did you give - - you gave a statement to the detectives in October of 2008; is that right?
>
> A: Yes.

---

⁹    It is not clear where this claim was raised. It appears that the claim is rooted in the "Strohm report" which was provided to Kushner on October 15, 2019, far after this January 2016 habeas petition. Thus, it appears this Brady claim is brought in Kushner's "Supplemental 2254 Motion" filed in June of 2021. *See* ECF No. 17.

> Q: Okay. And did you meet me that day?
>
> A: Yes, I did.
>
> Q: All right.  And did I tell you that you weren't going to get arrested for anything?
>
> A: Yes, you did.
>
> Q: But you didn't trust me, did you?
>
> A: No, I didn't trust you.
>
> Q: All right.
>
> …
>
> Q: Mr. Gary, did you ask me for immunity –
>
> A: No –
>
> Q: -- Even though I told you you weren't going to get arrested?
>
> A: No, I didn't
>
> Q: Oh, you didn't ask – did I offer to give you immunity?
>
> A: Yes, you did.
>
> Q: Okay, fair enough.  And did I explain to you what immunity meant?
>
> A: Yes, you did.

ECF No. 7-114 at 130:9-131:13. On cross, Kushner's counsel reemphasized Gary's immunity:

> Q: So its clear to the jury, I want to make a couple points clear here. You weren't charged with anything in this case is that correct?
>
> A: No I wasn't charged
>
> Q: Okay, because you got immunity right? I'll get to that.

*Id*. at 136:19-24.

> Q: And when you gave that statement, that's when - - before you gave the statement, you got immunity right?

> A: No I didn't.
>
> Q: You didn't?
>
> A: Yes, I did, yes I did. You're right.
>
> Q: Of course you did.
>
> A: Yeah.
>
> Q: So I understand the sequence here, Mr. McGoldrick came down, he saw you, he gave you immunity, use immunity. You've got to tell these people here
>
> A: He gave me immunity.
>
> Q: Gave you immunity. You know what immunity means because you've been in the criminal justice system. You know what it means?
>
> A: I ain't never had it before.
>
> Q: Never had it but you know what it is right?
>
> A: I still do. Yes, I do.

*Id.* at 137:16-138:9. Kushner's counsel then proceeded to read the immunity agreement, which had been admitted into evidence. *see* ECF No. 7-121 at 45, to Gary. ECF No. 7-114 at 138:21-139:20. Moreover, trial counsel made a point to address Gary's immunity in closing as well:

> Before [Gary] talked to the police, he got immunity. He's got - - he could tell them anything. He could tell them I shot Kennedy. He could tell them whatever he wants to tell them. They're not going to charge him. He still didn't get charged in this case he's not charged.

ECF No. 7-126 at 49:8-13. The jury instructions properly instructed the jury to consider what "interest a witness would have in the outcome of the litigation," ECF No. 7-120 at 16:24-25, whether "the witness had anything to gain or lose from the outcome of the case," *Id.* at 17:14-15, and whether the witness displayed "any motive to testify falsely[.]" *Id.* at 16:19.

The reason the Court does not find this evidence material is because the very nature of immunity is that it applies only *when the witness has something to be immune from*. Thus, the

jurors were aware of Gary's purported motivation to testify even if they were not aware of the exact terms of the threat. Gary's immunity was made a substantial issue at trial and the jurors were properly instructed to consider his motivation to testify and the purported suppression of this evidence does not undermine the Court's "confidence in the outcome of the trial."[10] *Kyles*, 514 U.S. at 434.

Accordingly, Kushner's argument fails because the evidence upon which Kushner's *Brady* claim relies is immaterial.

### C. Certificate of Appealability

A certificate of appealability ("COA") should only be issued "if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (quoting 28 U.S.C. § 2253(c)). "Where a district court has rejected the constitutional claims on the merits ... the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the denial of a habeas petition is based on procedural grounds and the Court does not reach the underlying constitutional claim, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

---

[10] Kushner quibbles slightly with the Commonwealth's presentation of the events. In particular, he takes issue with the Commonwealth telling the jury that Gary was only offered immunity after it had tried to convince Gary that he would not be prosecuted. *See* ECF No. 7-127, 121:24-122:20. Thus, Kushner argues, the jury was left with the mistaken impression that Gary was never under threat of prosecution—a notion purportedly belied by the Strohm report. However, that is incorrect because the Commonwealth indeed explained that Gary was served a Grand Jury subpoena and explained to the jury that "if [Gary] didn't show up, we would have locked him up for not appearing for the Grand Jury." *Id*. at 121:13-14.

In the Court's view, Kushner has failed to demonstrate his entitlement to a COA under the applicable standard, and no COA will be issued.

## V. CONCLUSION

After de novo review and for the reasons set forth above, the Court overrules the objections to the R&R and adopts the R&R's findings and recommendations in its entirety. Kushner's petition for habeas relief is denied and dismissed. The Court further declines to issue a COA or hold an evidentiary hearing.

A separate Order follows.

                            BY THE COURT:

                            */s/ Joseph F. Leeson, Jr.*
                            JOSEPH F. LEESON, JR.
                            United States District Judge